AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

### for the
Western District of Washington



FILED ___ LODGED
___ RECEIVED

NOV 06 2019

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                    DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One electronic device, more fully described in<br>Attachment A. | )<br>)<br>)<br>)<br>)<br>) |

Case No.  MJ19-5225

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One electronic device, more fully described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 641, 1361 | Theft of government property; depredation of government property |
| 18 U.S.C. §§ 3372, 1855, 844 | Trafficking in illegally cut timber; setting timber afire; using fire in furtherance of felony |

The application is based on these facts:

✓ See Affidavit of David Jacus, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

David Jacus, Law Enforcement Officer, USFS
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 11/06/2019 _____

_____
*Judge's signature*

City and state: _____ Tacoma, Washington _____

David W. Christel, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

| | |
|---|---|
| County of Jefferson | ) |
| | )   ss |
| State of Washington | ) |

I, David Jacus, a Law Enforcement Officer with the U.S. Forest Service on the Olympic National Forest, Quilcene, WA, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I have been employed as a Law Enforcement Officer with the U.S. Forest Service, Law Enforcement and Investigations, since March 2009, and am currently assigned to the Olympic National Forest.  My duties include detection and enforcement of criminal law offenses and apprehending persons who committed or were suspected of committing offenses on or affecting the National Forest System, to include natural resource crimes.  Prior to my employment with the United States Forest Service, I was a Law Enforcement Park Ranger with the National Park Service stationed at North Cascades National Park, Marblemount, WA. My duties were enforcing federal laws and regulation related to the management and protection of the National Park.

2.     I have completed the Federal Law Enforcement Training Center's Land Management Police Training Academy at Glynco, GA in February 2008.  I graduated from the National Park Service Seasonal Law Enforcement Academy at Santa Rosa Community College in 2003.  In May 1998, I earned a Bachelor of Science degree in environmental studies from University of Buffalo, NY.

3.     The information in this Affidavit is based upon the investigation I have conducted in this case, my conversations with other law enforcement officers who have engaged in various aspects of this investigation, and my review of reports written by other law enforcement officers involved in this investigation.

4.     Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are relevant to a determination

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  of probable cause to support the issuance of the requested warrant.  When the statements

2  of others are set forth in this affidavit, they are set forth in substance and in part.

3      5.    This application seeks authority to seize and search a mobile phone possessed

4  by a Harstine Island resident named Cassie Bebereia.  As discussed below, during a

5  November 4, 2019 interview, Bebereia displayed the device, and showed me text messages

6  on the device that are relevant to my investigation. She stated that the phone was the phone

7  of Justin Wilke, a defendant charged in cause number CR19-5364BHS, but law

8  enforcement has reason to believe this phone is also used by Bebereia, for the reasons

9  detailed below.  The telephone is a Samsung device, the front of which (other than the

10  screen) appears to be colored black, and is associated with the telephone number 360-401-

11  9879; it is further described in Attachment A.  The Device is believed to be located at the

12  residence of Bebereia, at 10 East Appaloosa Drive in Shelton, Washington.

13      6.    The applied-for warrant would authorize the forensic examination of the

14  Device for the purpose of identifying electronically stored data particularly described in

15  Attachment B.

16  **BACKGROUND ON WIRELESS CELL PHONES**

17      7.    Based on my training and experience, I know that wireless cell phones like

18  the Subject Device have capabilities that allow it to serve as a wireless telephone, digital

19  camera, portable media player, and GPS navigation device.  A wireless cell phone usually

20  contains a "call log," which records the telephone number, date, and time of calls made to

21  and from the phone.  Wireless cell phones may also include global positioning system

22  ("GPS") technology for determining the location of the device.  A wireless cell phone

23  usually also has the ability to take and store pictures as digital picture files using a built-in

24  camera.  In my training and experience, examining data stored on devices of this type can

25  uncover, among other things, evidence that reveals or suggests who possessed or used the

26  device. Finally, based on my knowledge, training, and experience, I know that electronic

27  devices can store information for long periods of time.

28

JACUS AFFIDAVIT - 2
USAO #2019R00380

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      There is probable cause to believe that things that were once stored on the Subject Device may still be stored there, for at least the following reasons:

a.      Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

9.      *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that

JACUS AFFIDAVIT - 3
USAO #2019R00380

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

10.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

11.     Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

12.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

13.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.   Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

14.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.   The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that

JACUS AFFIDAVIT - 4
USAO #2019R00380

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   might expose many parts of the device to human inspection in order to determine whether
2   it is evidence described by the warrant.

3       16.    *Manner of execution.*   Because this warrant seeks permission to examine a
4   device that is not already in law enforcement's possession, the execution of this warrant
5   will involve the physical intrusion onto a premises. Those premises are located at 10 East
6   Appaloosa Drive in Shelton, Washington, the property on which the Subject Device was
7   seen by the affiant on November 4, 2019, in the possession of Cassie Bebereia. This warrant
8   would authorize law enforcement agents to enter the property solely for the purpose of
9   locating and seizing the Subject Device; the property itself would not otherwise be
10  searched.  To the extent evidence or the instrumentality of a crime or contraband is within
11  officers' plain view while they are lawfully searching for and seizing the Subject Device,
12  and if law enforcement wishes to seize those items, law enforcement will return to this
13  Court to obtain a separate warrant to seize those items.

14              **BACKGROUND ON INVESTIGATION**

15      17.    On August 4th, 2018, at approximately 2 p.m., I learned from the Puget
16  Sound Interagency Communications Center about a wildland fire, hereafter referred to as
17  the "Maple Fire," near Elk Lake, in the Olympic National Forest. Firefighters who initially
18  responded to the fire stated that it was, at the fire's inception, burning in a big-leaf maple
19  tree near Jefferson Creek.  About one hour later, when I arrived at the forest road spur
20  leading to the trailhead closest to the fire's origin site, I spotted a Lilliwaup, Washington
21  resident named Justin Wilke driving out of that short spur road.  Shortly thereafter, I met
22  and interviewed Wilke and Lucas Chapman, both of whom were camping at a nearby
23  campsite. Wilke stated that he was on the spur road because he had been using a restroom
24  at the trailhead.  Wilke further stated that he knew nothing about the fire, that he had not
25  been harvesting timber, and that he did not have a chainsaw with him at the campsite.  I
26  also met and interviewed Cassie Bebereia, believed to be Wilke's girlfriend, who similarly
27  stated that Wilke had not been harvesting timber, and similarly insisted that Wilke did not
28  have a chainsaw with him at the campsite.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18.    Firefighters located several items at the fire's origin site: a gas can, a Gatorade bottle, two aerosol cans of wasp killer, and a backpack filled with tools associated with harvesting timber, including chainsaw chains, a coring tool used to drill into trees, and other tools, as well as a sweatshirt, keys, and headlamp.  Alan Richert, Wilke's neighbor at the time and sometime logging partner, later identified the sweatshirt as Wilke's and would identify one tool, a pair of channel locks, as being Richert's own property, which had gone missing.

19.    On August 8th, 2018, Washington State Department of Natural Resources Fire Investigator Albert Kassel performed a Cause and Origin Investigation with respect to the Maple Fire. Investigator Kassel determined the fire was human-caused and had started at the base of the maple tree identified by firefighters who initially responded to the fire. Both I and Investigator Kassel also noticed that the maple tree had several areas from which the bark had been intentionally scraped or cut away, a method commonly used by timber thieves to "check" the quality of a tree's wood prior to logging the tree.  Based on the presence of these check marks on the tree at the origin of the fire and the logging equipment recovered in the vicinity of that tree, law enforcement concluded that maple poachers had likely been preparing to log that tree when the fire began.

20.    On August 13th, 2018, law enforcement received a tip from Karen Kenmir, who related information from her sister, who had heard that three individuals, named "Cassie, Justin, and Thor," had been attempting to kill bees using fire, but that the fire "got away" from them.  A few days later, law enforcement identified "Thor" as Shawn Williams.

21.    On August 23rd 2018, law enforcement interviewed Richert.  Richert stated that he has logged with Wilke in the past, and had taught Wilke how to log trees, and that he often saw Wilke that summer processing maple wood blocks outside Wilke's residence, a short distance from Richert's residence.  Richert later stated under oath that he had seen Wilke use a Stihl 460 chainsaw to cut wood.

JACUS AFFIDAVIT - 6
USAO #2019R00380

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

22.    Richert also stated in his initial interview that Wilke had admitted to Richert the following: Wilke, Chapman, and Williams had been attempting to cut down and process a maple tree, but there was a bee hive in the tree, so the three of them poured gasoline on the tree and lit it in an attempt to kill the bees. The group believed the fire was extinguished before they departed the area. Richert stated that Williams and Bebereia were present when Wilke was talking about the incident leading to the Maple Fire.  When re-interviewed in 2019, and when he spoke under oath in this case, Richert recalled Williams, rather than Wilke, had related the story described above regarding the origin of the Maple Fire, and that Wilke, though present during the conversation, had stated something to the effect of "I didn't do anything" during Williams' conversation with Richert.

23.    Law enforcement next learned from Jason Roberts, the owner of a wood-processing mill in Tumwater, Washington, that he had purchased maple wood blocks from Wilke from April through August 2018. Jason Roberts had last spoken to Wilke on August 2nd, 2018, while purchasing maple blocks from Wilke.  Roberts' ledger detailed 21 sales of maple wood from Wilke to Roberts between April 25 and August 2, 2018.  The ledger further detailed the Washington State Specialized Forest Products permit number associated with each sale. Based on the ledger, Wilke presented one of two such permits to Roberts during each of the sales on Roberts's ledger. One of the two property owners listed on those permits, Marlane Hoback, informed law enforcement that she did not have any maple trees on her property, and that neither Justin Wilke nor Alan Richert (the individual listed as the seller on the permit) had removed any wood from her property. Hoback's permit was used by Wilke to sell wood to Roberts on 11 occasions between April 25 and June 15, 2018.[1]

---

[1] The second property owner listed on those permits, Charles Budd, stated that Wilke removed only a portion of the wood that he was supposed to remove from Budd's property.  Investigators have sampled a tree from Budd's property that Wilke allegedly harvested to determine whether that tree is a maple tree and whether that tree represents a DNA match to any of the wood that Wilke sold to Roberts during the summer of 2018.  The results of that DNA testing have, to date, been inconclusive.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

24.    Law enforcement collected samples of the wood that Roberts identified as having been purchased from Wilke.  Law enforcement also identified and took wood samples from three maple trees that had been illegally logged in the near vicinity (within a quarter mile) of the maple tree that was the origin site of the Maple Fire. Subsequent DNA testing of those samples, as well as the samples collected from Roberts' mill, revealed that a significant fraction (83 total blocks of wood, out of a total of approximately 225 blocks) of that wood that Wilke sold to Roberts came from the three maple trees located in the Olympic National Forest and near the maple tree that was the origin site of the Maple Fire.

25.    Law enforcement has also interviewed Lucas Chapman on several occasions. Initially, Chapman denied any involvement in logging in the national forest and stated that he had not seen Wilke with a chainsaw.  Chapman later recanted that story, and both told law enforcement and testified that, on a camping trip with Wilke, Williams, and Bebereia, Wilke had led Chapman and Williams in walks in the area near Jefferson Creek and Elk Lake, looking at potential maple trees to harvest. Chapman was going to be paid by Wilke to help carry out blocks of maple wood. On August 4, 2018, Chapman was with Wilke and Williams when they encountered the maple tree at the origin of the Maple Fire. Chapman stated that a bee's nest prevented them from logging the tree, so they sprayed the bee's nest with wasp killer spray. When that did not work, Wilke set fire to the bee's nest.  Chapman was later called over to help Wilke and Williams put out the fire using Gatorade bottles. When they believed the fire was out, Chapman returned to the campsite with Wilke and Williams.  During an interview with law enforcement, Chapman stated that Wilke had a chainsaw with them on the camping trip and that Wilke had hidden the chainsaw in the forest after being confronted by law enforcement about the fire.

26.    Law enforcement also interviewed Sondra Palafox and Samuel Davies, who confirmed that they went on a camping trip with Justin Wilke into an area near Elk Lake, and so near the origin site of the Maple Fire, in early July 2018. Palafox and Davies stated that they did not see or hear Wilke log maple wood during this trip, but Palafox stated

JACUS AFFIDAVIT - 8
USAO #2019R00380

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

under oath that Wilke left the campsite for significant periods of time, and left the campsite at one point in his car.

27.     On August 28, 2019, Wilke and Williams were indicted in eight-count indictment charging conspiracy in violation of 18 U.S.C. § 371; theft of public property in violation of 18 U.S.C. § 641; depredation of public property in violation of 18 U.S.C. § 1361; trafficking in unlawfully harvested timber in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) and 3373(d); setting timber afire in violation of 18 U.S.C. § 1855; and using fire in furtherance of a felony in violation of 18 U.S.C. § 844(h)(1). That case is currently pending trial and is cause number CR19-5364BHS.

## EVIDENCE RELATING TO THE SUBJECT DEVICE

28.     On November 4, 2019, I interviewed Cassie Bebereia, who, as noted above, is believed to be Wilke's girlfriend. Bebereia denied that either she or Wilke was involved in logging in the national forest or in setting the Maple Fire, but also conceded that she had been sick and inside her tent for most of the August 4, 2018 camping trip with Wilke in the area of the national forest near where the fire began.

29.     Bebereia stated that on August 4, 2018, after the fire had begun, she both called and texted a friend of hers, Drew Parks, and requested that Parks help her and Wilke by driving to Wilke's campsite to help them leave the area given the presence the forest fire. (Parks stated to law enforcement in a prior interview that he had in fact driven into the national forest that day, and had given Williams a ride home after the fire had already begun).

30.     When asked what phone she currently used, Bebereia stated that she was attempting to have a phone set up for her, and then stated that she was currently using a phone that she identified as Wilke's phone, which she produced. She also provided the phone number for that phone as 360-401-9879. This phone is the Subject Device. In a subsequent interview with Drew Parks on November 5, 2019, Parks informed me that Bebereia had communicated with him using that phone number within the last few weeks.

JACUS AFFIDAVIT - 9
USAO #2019R00380

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

31.     At a later point in the interview, Bebereia showed me text messages on the Subject Device from November 2018 that she stated were between her and another individual regarding a chainsaw that was allegedly stolen from Wilke during the summer of 2018. Bebereia stated that the text messages proved that Wilke did not have a chainsaw with which to log maple during August 4, 2018. However, when I examined the text messages, I observed that in one message Bebereia told the recipient individual that the chainsaw that was allegedly stolen was *not* Wilke's chainsaw, which was directly contrary to the statement Bebereia had just made to me. The text message communications included a picture of the chainsaw that had allegedly been stolen.

32.     During his initial interview with law enforcement on August 23, 2018, Richert provided the same phone number—360-401-9879—as the then-correct phone number for Justin Wilke.  In addition, Richert stated under oath that Wilke had at times called him (prior to the Maple Fire) from campsites in the Olympic National Forest to request favors.

33.     Based on my review of the text messages on the Subject Device, Richert's providing the same number in August 2018 has Wilke's number, and Bebereia's admission that she had communicated via phone on the day of the Maple Fire, I believe that the Subject Device is likely to contain communications content of which would serve as potential evidence of the crimes charged in this case, namely conspiracy in violation of 18 U.S.C. § 371; theft of public property in violation of 18 U.S.C. § 641; depredation of public property in violation of 18 U.S.C. § 1361; trafficking in unlawfully harvested timber in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) and 3373(d); setting timber afire in violation of 18 U.S.C. § 1855; and using fire in furtherance of a felony in violation of 18 U.S.C. § 844(h)(1).

## CONCLUSION

34.     Based on the facts set forth in this affidavit, there is probable cause to believe that Wilke, Williams, and potentially other co-conspirators have committed conspiracy in violation of 18 U.S.C. § 371; theft of public property in violation of 18 U.S.C. § 641;

JACUS AFFIDAVIT - 10
USAO #2019R00380

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

depredation of public property in violation of 18 U.S.C. § 1361; trafficking in unlawfully harvested timber in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1) and 3373(d); setting timber afire in violation of 18 U.S.C. § 1855; and using fire in furtherance of a felony in violation of 18 U.S.C. § 844(h)(1).  There is also probable cause to believe that the Subject Device, as described in Attachment A, will contain items described in Attachment B, which constitute evidence of these criminal violations.

David Jacus
Law Enforcement Officer, USFS

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 6ᵀᴴ day of November, 2019.

THE HONORABLE DAVID W. CHRISTEL
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT A

The property to be searched is a Samsung device, pictured below, and is associated with the telephone number 360-401-9879 (hereafter the "Subject Device"). The Subject Device is believed to be located at the residence of Ms. Bebereia, at 10 East Appaloosa Drive in Shelton, Washington. This warrant authorizes law enforcement agents to enter that residence solely for the purpose of locating and seizing the Subject Device.



The applied-for warrant would authorize the forensic examination of the Subject Device for the purpose of identifying electronically stored data particularly described in Attachment B.

ATTACHMENT A - 1
USAO #2019R00380

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT B**

2      All records on the Subject Device described in Attachment A that relate to violations

3   of 18 U.S.C. § 371, 18 U.S.C. § 641, 18 U.S.C. § 1361, 16 U.S.C. §§ 3372(a)(1)

4   and 3373(d), 18 U.S.C. § 1855; and 18 U.S.C. § 844(h)(1), and involve Justin Wilke

5   and/or Shawn Williams, since April 1, 2018, which are limited to:

6    • All records on the Subject Device showing the location of the phone during that

7         time period;

8    • All records on the Subject Device relating to logging, timber poaching, trips into

9         any United States national forests, and the possession, transportation, storage, or

10        sale of timber, including maple wood.

11   • All records on the Subject Device relating to forest fires or arson, and particularly

12        to the "Maple Fire" that began in the Elk Lake area of the Olympic National Forest

13        on August 4, 2018.

14   • All communications with or relating to Alan Richert, Shawn Williams, Lucas

15        Chapman, Jason Roberts, Sondra Palafox, and Samuel Davies;

16   • All communications with Cassie Bebereia between April and September

17        2018;

18   • All communications relating to Justin Wilke's locations between April and

19        September 2018;

20   • All photographs, videos, and other graphics on the Subject Device;

21   • Evidence of user attribution showing who used or owned the Subject Device at the

22        time the things described in this warrant were created, edited, or deleted, such as

23        logs, phonebooks, saved usernames and passwords, documents, and browsing

24        history.

25      As used above, the terms "records" and "information" include all of the foregoing

26   items of evidence in whatever form and by whatever means they may have been created

27   or stored, including any form of computer or electronic storage (such as flash memory or

28   other media that can store data) and any photographic form.

ATTACHMENT B - 1
USAO #2019R00380